Lara A. Swensen (8493)
JAMES DODGE RUSSELL & STEPHENS, P.C.
545 E 300 South
Salt Lake City, Utah 84102
Telephone: 801.363.6363
Email: lswensen@jdrslaw.com

*Counsel for Cornwell Quality Tools Co.*

**IN THE UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CORNWELL QUALITY TOOLS COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL E. BUTLER, an individual and PEB, LLC, a Utah limited liability company,<br><br>Defendants. | **COMPLAINT**<br><br>Civil No. 2:26-cv-892<br><br>Judge |

Cornwell Quality Tools Company ("Cornwell"), through its undersigned counsel, hereby files this Complaint against Defendants Paul E. Butler and PEB, LLC (collectively, "Defendants"), and for its claims alleges as follows:

**<u>PARTIES</u>**

1. Cornwell Quality Tools Company is an Ohio corporation with its office and principal place of business in Wadsworth, Ohio. It is registered to do business in the State of Utah.

2. On information and belief, Defendant Paul E. Butler resides in Utah County, Utah.

3. On information and belief, Defendant PEB, LLC is a Utah limited liability company with its principal place of business in Provo, Utah. On information and belief, all of PEB, LLC's members are domiciled in Utah.

**JURISDICTION AND VENUE**

4. This is an action for federal trademark infringement, unfair competition, and false designation of origin, and arises under the trademark laws of the United States, namely, Title 15 of the United States Code and, more particularly, 15 U.S.C. § 1114, 15 U.S.C. §§ 1116 - 1118, inclusive; 15 U.S.C. § 1121 and 15 U.S.C. § 1125(a); and related causes of action under the laws of the State of Utah and common law arising from the wrongful use by Defendants of certain of Cornwell's registered trademarks as described below.

5. This Court has original jurisdiction under the provisions of 15 U.S.C. § 1114, 15 U.S.C. § 1121, 15 U.S.C. § 1125(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), in that the claims arise under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.*

6. This Court also has original jurisdiction under 28 U.S.C. §§ 1338(b) with respect to claims arising under common law rights and claims arising under the laws of the State of Utah, in that such claims are joined with the substantial and related claims under the trademark laws of the United States, 15 U.S.C. §§ 1051, *et seq.*

7. Supplemental federal jurisdiction is also invoked under 28 U.S.C. § 1367(a) with respect to all other claims that are so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue for these claims is proper in this Court under 28 U.S.C. § 1391(b) in that all Defendants reside or are located in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS

**Cornwell's Trademarks:**

9. Cornwell is, and for many years prior to the acts complained of herein has been, engaged in the manufacture and sale in interstate commerce of high-quality precision automotive tools and equipment, more specifically, mechanic's hand-tools and related equipment (the "Products") and the provision of related technical and distribution services (the "Services") under one or more of the following trademarks which are registered in the U.S. Patent and Trademark Office (the "Marks"):

| Mark | Registration No. | Registration Date | Date of First Use in Interstate Commerce |
|---|---|---|---|
| Cornwell | 747,209 | 3/26/1963 | 1962 |
| CORNWELL | 747,210 | 3/26/1963 | 1920 |
| | 1,139,026 | 8/26/80 | 1963 |
| | 1,150,695 | 4/7/81 | 1966 |

| Mark | Registration No. | Registration Date | Date of First Use in Interstate Commerce |
|---|---|---|---|
| | 1,163,457 | 8/4/81 | 1972 |
| The Choice of Professionals | 1,276,492 | 5/1/84 | 1966 |
| The Choice of Professionals | 1,276,565 | 5/1/84 | 1966 |
| The Choice of Professionals | 2,497,549 | 10/16/01 | 1968 |
| TECH-CREDIT | 2,514,179 | 12/04/2010 | 2001 |
| | 2,533,695 | 1/29/02 | 1996 |
| | 3,456,834 | 7/1/08 | 1979 |
| | 3,470,727 | 7/22/08 | 1996 |
| The Choice of Professionals | 3,494,755 | 9/2/08 | 1979 |
| Cornwell | 3,548,901 | 12/23/08 | 1979 |
| blue POWER CORNWELL | 3,855,015 | 6/1/09 | 2009 |

| **Mark** | **Registration No.** | **Registration Date** | **Date of First Use in Interstate Commerce** |
|---|---|---|---|
| blue POWER CORNWELL | 3,920,502 | 6/1/09 | 2010 |
| Pro Series | 4,449,249 | 12/10/2013 | 2013 |
| IBN | 4,645,512 | 11/25/2014 | 2014 |
| IRON MAN BUSINESS NETWORK | 4,649,553 | 12/2/14 | 2014 |
| CORNWELL CUSTOM | 4,926,021 | 3/29/2016 | 2009 |
| ARCA | 7,306,458 | 02/13/2024 | 2023 |

10. The Marks have been used continuously in interstate commerce in connection with the Products beginning at least as early as the dates set forth above. Variations of the trade name "Cornwell" have been used in commerce since 1920 and under previous registrations. All of the Marks are currently registered, and most of the registrations are incontestable pursuant to 15 U.S.C. § 1065.

11. The Marks were developed by Cornwell to distinguish the Products from tools and related items made and sold by others by, among other things, prominently displaying the Marks on the Products themselves, on containers and packaging used for the Products, on trucks and delivery vehicles used with the Products and Services, on uniforms and other forms of identification used by distributors and dealers delivering the Products and Services, with the

Products and Services, and in trade and other advertising appearing in journals and periodicals distributed throughout the United States.

12. Cornwell's Products and Services are sold primarily to the professional mechanics' automotive tools and equipment market ("the Market"), through independent dealers, such as Defendants, who purchased the Products and Services from Cornwell.

13. There are dealers such as Defendants in the Market who operate through other companies similar to Cornwell, or operate entirely independently, selling goods and services obtained from various sources.

14. High-quality precision mechanics' automotive tools and equipment and related Services sold under the Marks are recognized by virtually all persons in the Market as being Cornwell's Products and Services originating from Cornwell.

15. Cornwell has used the Marks continuously on and/or in connection with the Products and Services since their respective inception, and each have acquired strong secondary meaning as being indicative of the source of high-quality, precision mechanics' automotive tools and equipment and related Services.

16. As a result of Cornwell's expenditure of a considerable amount of money and continuously marketing its Products and Services in connection with the distinctive and familiar Marks, the consuming public has come to recognize all mechanics' tools and related items and Services sold in connection with the Marks as originating from or otherwise approved or sponsored by or affiliated or connected with Cornwell.

17. On or about June 6, 2025, Cornwell and Defendants entered into a written agreement entitled Cornwell Quality Tools Company Dealer Franchise Agreement ("Dealer

Agreement"). A true and correct copy of the Dealer Agreement between Cornwell and Defendants is attached as Exhibit "A," and incorporated by reference. The Dealer Agreement provided that Defendants were to have a non-exclusive dealership of Cornwell's Products and Services.

18. Pursuant to the terms of the Dealer Agreement and through such relationship, Defendants distributed Cornwell's Products and Services bearing the Marks and had the non-exclusive right to use the Marks in connection with the distribution of said Products and Services, including use of the Marks in sales and promotional materials, on delivery trucks, uniforms, containers, packaging and other items used in connection with the distribution of the Products and Services.

19. Under the Dealer Agreement, Cornwell agreed to sell and Defendants agreed to buy, market and sell Cornwell's Products and Services in part of Utah, as set forth in the map following page 10 of the Dealer Agreement.

20. In the Dealer Agreement, at Page 4, Paragraph 10, Defendants recognized the validity of the Marks and agreed that they did not have, nor would acquire, any interest in the Marks. Defendants further agreed not to do anything that would impair Cornwell's rights, title or exclusivity in the Marks. The Dealer Agreement also provided in pertinent part at Page 8, Paragraph 17:

> Upon termination of this Agreement for any reason, all of [Defendants'] [rights pertaining to the trademarks will automatically revert to Cornwell. Upon termination, [Defendants] must immediately discontinue use of the marks and – at [Defendants'] own sole expense – [Defendant] must immediately remove all of the trademarks appearing on decals, signs or otherwise, and any terms confusingly similar to them, from [Defendants'] truck, clothing, business cards, documents and other

> property. [Defendants] must also discontinue any use of the trademarks or any reference to them in [Defendants'] advertising.

**Defendants' Infringing Conduct:**

21. On June 26, 2026, Cornwell sent Defendants a Notice of Termination of Defendants' Dealer Agreement, to be effective that date, pursuant to Defendants' voluntary Territory Release dated June 2, 2026. A true and correct copy of the Notice and Release are attached as Exhibit "B" and incorporated by reference.

22. As a result, under Paragraph 17 of the Dealer Agreement, all of Defendants' non-exclusive rights to use the Marks terminated as of June 26, 2026. Defendants were advised that after that date, they must cease to hold themselves out as a Cornwell dealership and must remove all uses of the Cornwell trade name and trademarks from their truck, clothing, stationery, business cards, etc.

23. Defendants nevertheless continued to use the Marks by, at least, leaving them on their truck, without Cornwell's knowledge or consent. Upon learning of the infringement, a demand that Defendants cease and desist was immediately sent to Defendants by Cornwell's Ohio counsel, on August 6, 2026. A true and correct copy of the first demand letter is attached as Exhibit "C" and is incorporated by reference.

24. Defendants did not comply with Ohio counsel's demand letter. Cornwell consequently was required to engage Utah counsel, who sent a demand letter to Defendants on August 19, 2026. A true and correct copy of Utah counsel's demand letter is attached as Exhibit "D" and is incorporated by reference.

25. Defendants did not comply with Utah counsel's demand letter.

26. There is an active national market for used tool trucks, including a website for that purpose, tooltrucks.com.

27. *Consequently, unless enjoined, Defendants may well sell the truck with the Marks to a third party selling in the Market who is not a Cornwell dealer, who may likely then operate the truck in commerce with the Marks, giving the misimpression that the third party is affiliated with Cornwell.* Cornwell would then be forced to try to find the third party and seek enforcement of the Marks against it. Since such trucks are often marketed nationally online, the third-party buyer could be anywhere in the country.

28. Defendants are thus continuing to use the Marks and are engaging in other infringing business practices in an attempt to pass themselves off as if still affiliated with Cornwell.

29. The natural, probable and foreseeable result of Defendants' wrongful misconduct, as alleged above, has been to deprive Cornwell of the benefits of using, selling, and licensing its Marks. Cornwell has also suffered a substantial loss of goodwill. Defendants' conduct has also created a likelihood of confusion between Cornwell's products and Defendants' products or those of a third party who may buy the truck and so has injured Cornwell's relations with present and prospective customers.

30. On information and belief, Cornwell alleges that unless enjoined by the Court, Defendants intend to continue their course of conduct and to wrongfully use, infringe upon, and otherwise profit from Cornwell's Marks.

31. As a direct and proximate result of the acts alleged above, Cornwell has already suffered irreparable injury, and lost profits. Cornwell has no adequate remedy at law to redress

all of the injuries that Defendants have caused and intend to cause by their conduct. Cornwell will continue to suffer irreparable damage and injury until Defendants' actions alleged above are enjoined by the Court.

## FIRST CLAIM FOR RELIEF

**(Infringement of Federally Registered Trademarks - 15 U.S.C. § 1114)**

32. Cornwell realleges and incorporates by their reference each and every allegation contained in paragraphs 1-30 of this Complaint as if fully set forth herein.

33. The actions of Defendants described herein constitute infringement of the Marks in violation of Section 32(b) of the Lanham Act, 15 U.S.C. § 1114. Despite termination of Defendants' Dealer Agreement, letters to Defendants notifying Defendants that they no longer had any rights whatsoever to continue to use the Marks, and despite threat of legal action, Defendants continue to so use the Marks without authorization in connection with the promotion and distribution of goods and services in and affecting interstate commerce.

34. Goods and services that may be sold in connection with the Marks are sold in and/or otherwise affect interstate commerce to the same consuming public and travel through the same trade channels as Cornwell's Products and Services.

35. Goods and services that may be sold in connection with the Marks may be substantially identical to, and compete directly with, Cornwell's Products.

36. Defendants have willfully and knowingly infringed and will continue to further infringe the rights of Cornwell and its federally registered Marks, in violation of 15 U.S.C. § 1114, as a result of the continued, unauthorized use of the Marks, with the intention of deceiving

and misleading the public, and by wrongfully trading on the goodwill and reputation of Cornwell.

37. The use by Defendants of the Marks is likely to cause confusion or mistake or deception of purchasers as to the source, origin, sponsorship, affiliation, approval or connection of Cornwell's goods and services with those of Defendants and/or any third party who buys Defendants' truck with Marks on it.

38. By their wrongful acts, Defendants have caused and are likely to continue to cause great injury and damage to Cornwell which cannot now be accurately computed and, unless restrained and enjoined by the Court, Defendants will continue to cause irreparable injury and damage to Cornwell and to the goodwill associated with Cornwell's Marks.

39. Due to Defendants' prior agreement with Cornwell, and the notices sent to Defendants, Defendants knew or should have known that they had no legal basis to use Cornwell's Marks. Despite their knowledge, Defendants willfully and deliberately infringed on Cornwell's Marks and continue to do so.

40. As a result of Defendants' willful and deliberate infringement of Cornwell's Marks, Cornwell requests judgment granting preliminary and permanent injunctions prohibiting Defendants' use of Cornwell's Marks, together with its costs of suits and reasonable attorney's fees pursuant to 15 U.S.C. § 1117(b).

**SECOND CLAIM FOR RELIEF**

**(False Designation of Origin and Unfair Competition under the Lanham Act – 15 U.S.C. § 1125(a))**

41. Cornwell realleges and incorporates by reference each and every allegation contained in paragraphs 1-40 of the Complaint as if fully set forth herein.

42. After June 26, 2026, Defendants' use of the Marks and/or or substantially similar Marks in connection with the promotion and distribution of their goods and services in commerce has caused or is likely to cause confusion, mistake and deception among consuming public as to the origin, sponsorship, and/or approval of the products and services with those of Defendants and/or of a third party who buys Defendants' truck with the Marks on it.

43. As a result of Defendants' intentional, wrongful acts, purchasers have purchased or are likely to purchase Defendants' and/or a third party's goods and services, thereby injuring Cornwell by diversion of sales.

44. Cornwell has no control over the quality of the goods and services sold by Defendants or any third party who may buy the truck with the Marks on it. Because of the confusion as to the origin, sponsorship or approval of other goods and services engendered by Defendants, Cornwell's extensive and valuable goodwill is at the mercy of the Defendants and/or a third party who buys the truck with the Marks still on it, and Cornwell will suffer irreparable harm should such false representation be allowed to occur.

45. Such acts by Defendants were willful and deliberate, and designed to specifically trade upon the enormous and valuable goodwill of Cornwell.

46. By their wrongful acts, Defendants have caused and will continue to cause great harm and damage to Cornwell which cannot now be assessed or computed and, unless restrained by the Court, will continue to cause irreparable injury and damage to Cornwell and to the goodwill associated with the Marks.

47. As a direct and proximate result of the foregoing, Cornwell has and will continue to suffer damages according to proof at trial. Consistent with 15 U.S.C. § 1117(a), among other remedies, Cornwell is entitled to injunctive relief.

48. Due to Defendants' prior agreement with Cornwell, and the notices sent to Defendants, Defendants knew or should have known that they had no legal basis to use Cornwell's Marks. Despite that knowledge, Defendants willfully violated 15 U.S.C. § 1125(a).

**THIRD CLAIM FOR RELIEF**
**(Unjust Enrichment)**

49. Cornwell realleges and incorporates by reference each and every allegation contained in paragraphs 1-48 of the Complaint as if fully set forth herein.

50. The claim arises under the principles of equity concerning unjust enrichment and misappropriation of rights.

51. Cornwell has expended a considerable amount of time, money and effort developing and promoting the Marks for Cornwell's Products and Services.

52. Until recently, Defendants had a non-exclusive dealership of Cornwell's Products and Services. Through such relationship, Defendants received from Cornwell the benefit of the considerable amount of time, money and effort expended by Cornwell in developing and promoting the Marks for Cornwell's Products and Services and, in fact, Defendants distributed to Defendants' customers sales and promotional material as well as Cornwell's goods and services bearing the Marks.

53. Through its relationship with Cornwell, Defendants acquired actual knowledge that the consuming public recognizes mechanics' tools and related items sold under the Marks as emanating from Cornwell.

54. The unauthorized use of the Marks by Defendants for their goods and services has caused and is likely to cause confusion with Cornwell's Products and Services bearing the Marks.

55. Defendants have acted unfairly in their continued use of the Marks and it would be inequitable for Defendants to continue to use the Marks and retain the associated benefit of their use.

56. Defendants have taken and will continue to take unfair advantage of the goodwill and business value developed by Cornwell in the Marks.

57. Defendants have misappropriated and will continue to misappropriate and illegally exploit the valuable property rights and goodwill of Cornwell and its Marks. As a result of such misappropriation, Cornwell will suffer irreparable injury to its property and goodwill, and Defendants will be unjustly enriched thereby to the detriment of Cornwell, entitling Cornwell to injunctive relief and its costs of suit.

**FOURTH CLAIM FOR RELIEF**
**(Common Law Trademark Infringement and Unfair Competition)**

58. Cornwell realleges and incorporates by reference each and every allegation contained in paragraphs 1-57 of the Complaint as if fully set forth herein.

59. Cornwell has established a good name for its Products and Services which has, in the mind of the public, become associated with the Marks. Indeed, Cornwell has used the

Marks in connection with the distribution and sales of the Products and Services in Utah and throughout the United States and, as such, Cornwell owns and enjoys common law rights in Utah and throughout the United States in and to the Marks which are superior to any rights which Defendants may claim in and to the Marks in any form or style with respect to the manufacture, sale and distribution of mechanics' tools and related goods and services.

60. Use of the Marks by Defendants, or by a third party who may purchase Defendants' truck with the Marks on it, in connection with the manufacture, sale and distribution of goods and services in the State of Utah and elsewhere throughout the United States has ufairly caused and is likely to unfairly cause confusion as to the source of the goods and services in that the purchasers thereof have associated or will be likely to associate the goods and services with and as originating from or being sponsored or approved by or affiliated or connected with Cornwell, to the detriment of Cornwell.

61. As a result of these acts of infringement and unfair competition by Defendants, Cornwell has suffered and will continue to suffer irreparable injury to its reputation and goodwill, entitling it to injunctive relief and its costs of suit.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Contract)**

62. Cornwell realleges and incorporates by reference each and every allegation contained in paragraphs 1-61 of the Complaint as if fully set forth herein.

63. Under the Dealer Agreement, Cornwell agreed to sell and Defendants agreed to buy tools to market and sell Cornwell's Products and Services in the area of Utah set out in Section 1 of the Dealer Agreement.

64. Under Paragraph 10 of the Dealer Agreement, Defendants recognized the validity of the Marks, agreed to have no interest in the Marks, and agreed to do no act that would impair Cornwell's rights in the Marks, and that after termination of the Dealer Agreement, Defendants would cease all use of the Marks.

65. Under Paragraph 17 of the Dealer Agreement, as a result of the termination of Defendants' Dealer Agreement, all of Defendant's non-exclusive rights to use the Marks immediately terminated.

66. Despite such termination and letters to Defendants notifying Defendants that they no longer had any rights whatsoever to continue to use the Marks, and despite threat of legal action, Defendants, in breach of the Dealer Agreement, continue to so use the Marks without authorization in connection with Defendants' promotion and sale of Defendants' truck and of goods and services in and affecting interstate commerce.

67. Cornwell has performed all conditions and covenants Cornwell is required to perform under the Dealer Agreement, except those excused by Defendants' conduct.

68. As a proximate result of Defendants' breach of the Dealer Agreement, Cornwell has and will suffer irreparable damage and injury, entitling it to injunctive relief and its costs of suit.

**SIXTH CLAIM FOR RELIEF**
**(Unfair Competition under Utah Code 13-5a-101 et seq.)**

69. Cornwell realleges and incorporates by reference each and every allegation contained in paragraphs 1-68 of the Complaint as if fully set forth herein.

70. The actions of Defendants described herein constitute unfair competition in violation of Utah law, including in particular the Unfair Competition Act, Utah Code 13-5a-101 *et seq*. Without authorization, Defendants have unlawfully, unfairly, and fraudulently sold and advertised their goods and services under the Marks.

71. This use of the marks has led to a material diminution in the value of Cornwell's intellectual property, including the Marks. Specifically, Defendants have passed off their goods and services as those of Cornwell, confused and deceived purchasers as to the source, sponsorship, approval or certification of, or the affiliation, connection or association with Defendants' goods and services and attempted to obtain the acceptance of Defendants' goods and services based on the reputation and good will of Cornwell and its high-quality Products and Services sold in connection with the Marks.

72. As a direct and proximate result of Defendants' wrongful conduct, Defendants have caused and will cause confusion, mistake and deception among the purchasing public as to the source of Defendants' goods and services and Defendants have received and will continue to receive sales and profits generated from the strength of Cornwell's success, goodwill and customer recognition. As a result of these acts of infringement and unfair competition, Cornwell has suffered and will continue to suffer irreparable injury and damage to its business relationships with its current and prospective customers, including but not limited to the material

diminution of the value of Cornwell's intellectual property, lost profits, lost reputation, and loss of goodwill.

73. Cornwell is accordingly entitled to injunctive relief, damages (including potentially punitive damages), and attorney's fees incurred in bringing this action.

**SEVENTH CLAIM FOR RELIEF**
**(Deceptive Trade Practices under Utah Code 13-11a-1 et seq.)**

74. Cornwell realleges and incorporates by reference each and every allegation contained in paragraphs 1-73 of the Complaint as if fully set forth herein.

75. The actions of Defendants described herein constitute unfair competition in violation of Utah law, including in particular the Deceptive Trade Practices under Utah Code 13-11a-1 *et seq*. Without authorization, Defendants have unlawfully, unfairly, and intentionally sold and advertised their goods and services under the Marks so as to pass off their goods and services as those of Cornwell, to confuse and deceive purchasers as to the source, sponsorship, approval or certification of, or the affiliation, connection or association with Defendants' goods and services; and to obtain the acceptance of Defendants' goods and services based on the reputation and good will of Cornwell and its high-quality Products and Services sold in connection with the Marks.

76. As a direct and proximate result of Defendants' wrongful conduct, Defendants have caused and will cause confusion, mistake and deception among the purchasing public as to the source of Defendants' goods and services and Defendants have received and will continue to receive sales and profits generated from the strength of Cornwell's success, goodwill and customer recognition. As a result of these acts of infringement, deception, and unfair competition, Cornwell has suffered and will continue to suffer irreparable injury and damage to

its business relationships with its current and prospective customers, including but not limited to the material diminution of the value of Cornwell's intellectual property, lost profits, lost reputation, and loss of goodwill.

77. Cornwell is accordingly entitled to injunctive relief, actual or statutory damages, and costs related to bringing this suit.

**EIGHTH CLAIM FOR RELIEF**
**(Preliminary and Permanent Injunctions)**

78. Cornwell realleges and incorporates by reference each and every allegation contained in paragraphs 1-77 of the Complaint as if fully set forth herein.

79. Beginning on or about June 26, 2026, the effective date of the termination of the Dealer Agreement, and continuing to the present time, Defendants wrongfully and unlawfully used Cornwell's Marks without authorization in connection with Defendants' promotion, sale and distribution of Defendants' truck, goods and services in interstate commerce.

80. Despite letters to Defendants notifying Defendants that they no longer have any rights whatsoever to continue to use the Marks, and despite threat of legal action, Defendants have refused and still refuse to refrain from their conduct.

81. Defendants' wrongful conduct, unless and until enjoined and restrained by order of the Court, will cause great and irreparable injury to Cornwell in that Defendants' continued use of Cornwell's Marks will deceive and mislead the consuming public and will cause harm to the goodwill and reputation of Cornwell. Defendants' conduct will further cause confusion, mistake and deception of the consuming public and will result in dilution of the Marks, material diminution of the value of Cornwell's intellectual property, and diversion of sales from Cornwell.

82. Cornwell has no adequate remedy at law for the injuries currently being suffered. It will be impossible for Cornwell to determine the precise amount of damage that it will suffer if Defendants' conduct is not restrained and, Cornwell may be forced to institute a multiplicity of actions to obtain adequate other relief and compensation for its injuries.

83. Cornwell seeks preliminary and permanent injunctions restraining and enjoining Defendants, their agents, servants, employees, successors and assigns and all others acting in concert or participation with them as follows:

a. From infringement of Cornwell's Marks (U.S. Trademark Registration Numbers 747,209; 747,210; 1,139,026; 1,150,695; 1,163,457; 1,276,492; 1,276,565; 2,497,549; 2,514,179; 2,533,695; 3,456,834; 3,470,727; 3,494,755; 3,548,901; 3,855,015; 3,920,502; 4,449,249; 4,645,512; 4,649,553; 4,898,747, 4,926,021 and 7,306,458) through the display of said Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise infringing upon Cornwell's Marks;

b. From unfairly competing with Cornwell through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise unfairly competing with Cornwell;

c. From engaging in unfair and deceptive trade practices through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise engaging in unfair and deceptive trade practices;

d. From infringing upon and competing unfairly with Cornwell with respect to its common law and state rights in the Marks through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise infringing upon and competing unfairly with Cornwell with respect to its common law and state rights in the Marks;

e. From dilution of Cornwell's Marks through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise diluting Cornwell's Marks;

f. From injuring Cornwell's business reputation through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or

any other business equipment or marketing materials, or otherwise injuring Cornwell's business reputation;

g. From leading anyone to believe or representing, either orally or in writing, that Defendants are a dealership of Cornwell or distributor or otherwise professionally affiliated or associated with Cornwell;

h. For an order to surrender for destruction all decals, labels, stationery, business cards, invoices, packaging, containers, advertising materials, uniforms or any other business equipment or marketing materials which displays Cornwell's Marks; and

i. For preliminary and permanent orders prohibiting Defendants from selling or otherwise transferring ownership and/or possession of their truck with the Marks on it.

**REQUEST FOR RELIEF**

WHEREFORE, Cornwell requests relief against Defendants Paul E. Butler and PEB, LLC, as follows:

1. Judgment that Cornwell's Trademarks have been infringed and/or diluted by Defendants' willful and deliberate actions under 15 U.S.C. §1114, 15 U.S.C. §1123(c)(1) and Federal Common Law;

2. Judgment that Defendants have committed unfair competition and deceptive trade practices in violation of Utah common law and statutory law, in particular the Unfair Competition Act, Utah Code 13-5a-101 *et seq*. and the Deceptive Trade Practices Act, Utah Code 13-11a-1 *et seq*.;

3. Judgment that Defendant, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, be enjoined preliminarily and permanently:

a. From infringement of Cornwell's Marks (U.S. Trademark Registration Numbers 747,209; 747,210; 1,139,026; 1,150,695; 1,163,457; 1,276,492; 1,276,565; 2,497,549; 2,514,179; 2,533,695; 3,456,834; 3,470,727; 3,494,755; 3,548,901; 3,855,015; 3,920,502; 4,449,249; 4,645,512; 4,649,553; 4,898,747, 4,926,021 and 7,306,458) through the display of said Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendant' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise infringing upon Cornwell's Marks;

b. From unfairly competing with Cornwell through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise unfairly competing with Cornwell;

c. From engaging in unfair and deceptive trade practices through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise engaging in unfair and deceptive trade practices;

d. From infringing upon and competing unfairly with Cornwell with respect to its common law and state rights in the Marks through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise infringing upon and competing unfairly with Cornwell with respect to its common law and state rights in the Marks;

e. From dilution of Cornwell's Marks through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise diluting Cornwell's Marks;

f. From injuring Cornwell's business reputation through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of decals or otherwise from Defendants' vehicle, stationery, business cards, invoices, packaging, containers, advertising, uniform or any other business equipment or marketing materials, or otherwise injuring Cornwell's business reputation;

g. From leading anyone to believe or representing, either orally or in writing, that Defendants are a dealership of Cornwell or distributor or otherwise professionally affiliated or associated with Cornwell;

h. For an order to surrender for destruction all decals, labels, stationery, business cards, invoices, packaging, containers, advertising materials,

uniforms or any other business equipment or marketing materials which displays Cornwell's Marks; and

i. For orders prohibiting Defendants from selling or otherwise transferring ownership and/or possession of their truck with the Marks on it.

4. For an award of damages, including actual and statutory damages, as legally appropriate.

5. For an award of costs and reasonable attorney fees and such other and further relief as the Court may deem just and proper.

DATED this 28th day of September, 2026.

JAMES DODGE RUSSELL & STEPHENS, P.C.

*/s/ Lara A. Swensen*
Lara A. Swensen
*Counsel for Cornwell Quality Tools*